**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.W.-1, G.W.-1, J.W.-2, and G.W.-2**

**No. 21-0810** (Kanawha County 21-JA-215, 21-JA-216, 21-JA-217, and 21-JA-218)

**MEMORANDUM DECISION**

Petitioner Father S.W., by counsel Christopher C. McClung, appeals the Circuit Court of Kanawha County's September 10, 2021, order terminating his parental rights to J.W.-1, G.W.-1, J.W.-2, and G.W.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him an improvement period when it improperly considered past services provided to him.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parents have an extensive Child Protective Services ("CPS") history dating back several years. Prior to the instant petition's filing, the oldest child, G.W.-1, was placed in the guardianship of his grandmother due to the parents' inability to care for him. Then, in 2012, a child abuse and neglect petition was filed against the parents when then-nine-month-old J.W.-1 was brought to the hospital and diagnosed with severe diaper rash and thrush. The parents were offered

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two sets of the siblings share the same initials, we will refer to them as J.W.-1 and J.W.-2, and G.W.-1 and G.W.-2, respectively, throughout this memorandum decision.

[2]Petitioner does not assign as error the termination of his parental rights.

services from the DHHR for several months during that case but consistently tested positive for opiates and marijuana. Ultimately, J.W.-1 was placed in the guardianship of the grandmother. In 2013, a child abuse and neglect petition was filed against the parents after the mother gave birth to child G.W.-2 and he tested positive for opiates such as hydrocodone and oxycodone, and experienced significant withdrawal symptoms. The parents were offered reunification services during that proceeding but chose to voluntarily relinquish their parental rights at their adjudication hearing. In 2017, a child abuse and neglect petition was filed against the parents after J.W.-2 was born drug-affected. The parents received improvement periods and participated in services such as parenting and adult life skills classes and drug treatment. Ultimately, J.W.-2 was returned to the parents and the matter was dismissed with ninety days of additional services and DHHR supervision.

The instant petition was filed in April of 2021 after the DHHR received multiple referrals regarding the family. The DHHR indicated that the grandmother who had guardianship of J.W.-1, G.W.-1, and G.W.-2 died in April of 2020, and the parents took the children back into their home without reporting it to the DHHR. The DHHR alleged that the parents were suspected of using drugs and engaging in domestic violence in the home, and that the children were frequently very dirty and unbathed. The DHHR further alleged that the living conditions were poor with trash scattered throughout the home. Specifically, in one referral, a teacher observed the mother staggering back and forth during one of the children's virtual schooling sessions, and the teacher further reported that the home was filthy and piled with trash when she visited the home. A CPS worker spoke to petitioner, who reported that the grandmother had died over a year prior and that the children came back to live with them at that time. However, he denied the allegations of drug abuse and domestic violence.

The circuit court held a preliminary hearing in May of 2021. A CPS worker testified regarding her investigation of the home, stating that the home was malodorous and she had concerns that the mother was abusing drugs. The CPS worker further stated that the children had been in the parents' care since at least April of 2020, if not earlier, and that the parents had not enrolled the children in school until February of 2021. The CPS worker testified that G.W.-1 was failing all of his classes, and that G.W.-2 had an alleged medical issue for which the parents had not sought treatment. Regarding G.W.-2's teacher's referral, the CPS worker stated that the teacher reported that G.W.-2 normally keeps his camera and microphone turned off during virtual school. However, the teacher reported that, on one day in particular, G.W.-2 turned on his camera and kept turning it towards the mother to show that she was stumbling around. The CPS worker testified that the teacher believed the child was "trying to ask for help without saying it." According to the CPS worker, when she spoke to petitioner about the children being in his home, he admitted that he should have contacted the DHHR upon the grandmother's death but failed to do so.

Petitioner testified that the smell in his home could be due to a plumbing issue that occurred a few days before the CPS worker's visit. Otherwise, petitioner stated that he could not explain the smell. Petitioner further testified that the children had been enrolled in virtual school in Ohio, where the grandmother lived, and that they remained enrolled in that school until February of 2021, when they were instructed to enroll the children in school in West Virginia. Petitioner denied that he failed to enroll the children in school during that time. Petitioner stated that he would participate in services if they were offered.

Following testimony, the circuit court sustained the petition and ordered the children to be removed from the parents' home. The circuit court found that the evidence established that there had been hygiene issues, poor home conditions, and educational and medical neglect. The circuit court ordered petitioner to participate in a parental fitness evaluation but denied other services at that time because "[t]he rest of the services had been offered in the previous case."

In June of 2021, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent.

The circuit court held a dispositional hearing in September of 2021. Petitioner filed a motion for a post-dispositional improvement period. The DHHR presented the testimony of a CPS worker, who recommended the termination of petitioner's parental rights. The worker testified that this was petitioner's fourth child abuse and neglect proceeding and that he had been offered services in each of the three prior proceedings. The worker stated that petitioner had participated in services for a total of approximately one year and nine months during the course of prior proceedings and that there was nothing new the DHHR could offer him in terms of services. The worker further indicated that she did not believe petitioner meaningfully took responsibility for his actions and that, as such, services would not be feasible. Additionally, petitioner was ordered to submit to a parental fitness evaluation but failed to attend his appointment. Records of the children's psychological evaluations were also admitted into evidence.

Petitioner testified that he had been addressing conditions in the home by replacing sheetrock and flooring and remodeling the bathrooms, and that he had maintained sobriety throughout the proceedings. Petitioner also testified that he would comply with services if he were granted an improvement period and would ensure that the children attended school. Petitioner denied that he ever received notice of an appointment for a parental fitness evaluation. However, despite testifying that he accepted responsibility for his actions, petitioner stated "[i]t's just crazy. It's just crazy. I mean, I love my kids. They're not abused. . . . [The CPS worker] lied to me and told me [the petition] was just for a custody hearing and that was it, and then it's just been all lies."

Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated his parental rights to the children. The circuit court found that petitioner did not meet his burden of proof in requesting an improvement period as he failed to participate in his parental fitness evaluation and presented no evidence, beyond his own testimony, as to his drug treatment, employment, or the condition of his home. The circuit court also relied on petitioner's prior participation in an improvement period and/or services in denying him an improvement period. The circuit court noted that the services in those prior cases "are the exact type of services that would be offered in the present case" and that "[c]learly, the parents did not benefit from those services as the current petition has many of the same issues that ha[ve] plagued this family since the 2012 abuse and neglect case."

The circuit court also made extensive findings regarding the children's psychological evaluations, including that the children suffered delays and/or behavioral issues and needed continuing psychological treatment and services, as well as to be placed in a highly structured

home environment. The circuit court noted that the children were thriving in their foster placements and all of the children except J.W.-1 reported that they did not want to be returned to petitioner's care.

Lastly, the circuit court considered that the parents seemingly avoided any professional mandatory reporters, such as teachers and doctors, once the children were back in their care so as to not alert the DHHR. As a result, the children's educational, dental, medical, and mental health needs were neglected during the year the parents had them in their care. The circuit court further found that the parents' CPS history demonstrated that they had fourteen years to correct their problems of substance abuse, domestic violence, failure to provide, and medical and educational neglect and that, despite having been offered a plethora of services, they reverted to their past behaviors. As such, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's September 10, 2021, dispositional order terminating his parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him a post-dispositional improvement period. Petitioner contends that he stipulated to the allegations of abuse and neglect at adjudication and "is aware that he has issues that need to be addressed." However, he simply needed more time and services. According to petitioner, he previously demonstrated that he is "capable of being compliant" as he successfully completed an improvement period during prior proceedings. Petitioner also argues that he could not demonstrate that he would be compliant with services when no services were offered and that he should have been granted the opportunity to avail himself of services, "even if the chances seem remote." Petitioner contends that the circuit court's consideration of his prior cases and services received therein were given an improper

---

[3]The mother's parental rights were also terminated below. The permanency plan for J.W.-1, J.W.-2, and G.W.-2 is adoption by their respective foster families. The permanency plan for G.W.-1 is guardianship by his foster family.

amount of weight and notes that those services were targeted towards raising one child only. In sum, petitioner avers that he could have benefited from additional services, he was willing to comply, "there was still hope that the family unit could have been preserved," and the circuit court erred in denying him an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000)). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner argues that the circuit court gave improper weight to the fact that petitioner had previously participated in prior services and an improvement period, we find no error. The record is clear that the instant matter was petitioner's fourth abuse and neglect proceeding and that he had been offered services in each of his prior proceedings, although he declined to participate in some. The record demonstrates that petitioner participated in services for a total of nearly twenty-one months and did successfully complete an improvement period in the 2017 proceedings. Petitioner failed to maintain any lasting changes in his behavior, resulting in the filing of the instant proceedings. The circuit court concluded that the services that could have been offered in the instant proceedings were the same services that had already been provided to petitioner previously and that the children needed permanency. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). In light of the continued pattern of abuse and neglect over the course of fourteen years, we are unable to find that the circuit court abused its discretion in considering the services offered throughout the prior three proceedings when it denied petitioner an improvement period in the underlying proceedings.

Moreover, the circuit court considered other factors apart from petitioner's prior participation in services when denying him an improvement period. While petitioner contends that he was unable to meet his burden of demonstrating that he was likely to participate when there were no services to comply with, the record demonstrates that a parental fitness evaluation was scheduled for petitioner, but he failed to appear. Further, petitioner maintained throughout the proceedings that the children were not abused. Specifically, at the dispositional hearing, petitioner testified that the children were not abused, that the CPS worker lied to petitioner about the nature of the proceedings, and that the proceedings had "just been all lies." We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to participate in the one service offered to him during the proceedings below, and his refusal to accept responsibility for his actions, an improvement period would have been an exercise in futility at the children's expense. Thus, we find no error in the circuit court's decision to deny petitioner an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment